# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

TAMIKA L. CHASE,

       Plaintiff,

v.

METROPOLITAN ATLANTA
RAPID TRANSIT AUTHORITY
(MARTA),  Chief of Police
WANDA Y. DUNHAM, Deputy
Chief  MICHAEL BURROWS, and
Lieutenant ALOMA HOLSEY

       Defendants.

Case No.

**VERIFIED COMPLAINT**

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Tamika L. Chase and hereby files this Complaint

for Damages pursuant to 42 U.S.C. §1983 against the Metropolitan Atlanta Rapid

Transit Authority, Chief of Police Wanda Y. Dunham, Deputy Chief Michael

Burrows, and Lieutenant Aloma Holsey and hereby states as follows:

## INTRODUCTION

1. This action arises from the unlawful use of a Conducted Electroshock

   Weapon commonly known as a "Taser" or "CEW" against TAMIKA L.

CHASE (hereinafter "Plaintiff"), a police officer for the Metropolitan Atlanta Rapid Transit Authority Police Department.

## IDENTIFICATION OF THE PARTIES

2. The foregoing paragraphs are incorporated herein as if quoted verbatim.

3. At all times relevant hereto, Plaintiff Tamika L. Chase was a resident of the State of Georgia and a citizen of the United States of America.

4. Defendant METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY (hereinafter "MARTA") is now, and at all times relevant to this action has been, a governmental entity that provides public transportation in the Northern District of Georgia. MARTA maintains its own police force to patrol the transit system.

5. Defendant WANDA Y. DUNHAM (hereinafter Defendant "Dunham") is now, and at all times relevant to this action has been, the Chief of Police at the MARTA Police Department. At all relevant times herein, Defendant Dunham was acting under color of state law and within the scope of her employment as the MARTA Police Chief.

6. Defendant MICHAEL BURROWS (hereinafter "Burrows") is now, and at all times relevant to this action has been, the Deputy Chief of Police

at the MARTA Police Department.  At all relevant times herein, Defendant Burrows was acting under color of state law and within the scope of his employment as the MARTA Police Deputy Chief.

7.      Upon information and belief, Defendant ALOMA HOLSEY (hereinafter "Holsey") is now, and at all times relevant to this action has been, a Lieutenant and Training Commander for the MARTA Police Department.  At all relevant times herein, Defendant Holsey was acting under color of state law and within the scope of her employment as the MARTA Police Officer.

## JURISDICTION, VENUE, AND NOTICE

8.      This action arises under the United States Constitution and Georgia State Law, particularly the Fourteenth Amendment; and 42 U.S.C. §1983.

9.      This Court has subject matter jurisdiction over Plaintiff's federal claims by operation of 28 U.S.C. §1331 and §1343.

10.      This Court has subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C §1367.

11.      This Court is authorized to award attorney's fees pursuant to 42 U.S.C. §1988.

12.     Defendant MARTA's principal place of business is 2424 Piedmont Road Northeast, Atlanta, Georgia 30324. Ms. Elizabeth O'Neill is the registered agent authorized to receive service at this address.

13.     Defendant Dunham is, and at all relevant times was, a citizen of Georgia residing in Newton County.  She may be personally served at 60 Caseys Way, Covington, Georgia 30014.

14.     Defendant Burrows is, and at all relevant times was, a citizen of Georgia residing in Cobb County.  He may be personally served at 705 Powers Ferry Road, Marietta, Georgia 30067.

15.     Defendant Holsey, is and at all relevant times was, a citizen of Georgia, residing in Henry County.  She may be personally served at 247 Carmell Court, McDonough, Georgia 30252.

16.     Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C §1391(b) and §1391(c), because the acts or omissions that give rise to the claim occurred there, because Defendant MARTA's principal place of business lies within the District, and because all defendants conduct business within the district.

17.     This court has General Personal Jurisdiction over MARTA, because it conducts business within the Northern District of Georgia.  This court also has specific personal jurisdiction over MARTA because it has sufficient

contacts within the Northern District of Georgia, and has committed tortious and unconstitutional acts against the plaintiff within the District.

18.     This court has specific personal jurisdiction over Defendant Dunham because she has sufficient contacts with The Northern District of Georgia. Defendant Dunham is employed as the Chief of Police of MARTA, and committed tortious and unconstitutional acts against the plaintiff within the District.

19.     This court has specific personal jurisdiction over Defendant Burrows because he has sufficient contacts with The Northern District of Georgia. Defendant Burrows is employed as the Deputy Chief of Police of MARTA, and committed tortious and unconstitutional acts against the plaintiff within the District.

20.     This court has specific personal jurisdiction over Defendant Holsey because she has sufficient contacts with The Northern District of Georgia. Defendant Holsey is employed as a Lieutenant of MARTA, and committed tortious and unconstitutional acts against the plaintiff within the District.

21.     Plaintiff has provided timely written notice of her claim to all Defendants pursuant to O.C.G.A. §36-33-5.

22.     All other conditions precedent have been satisfied.

## STATEMENT OF FACTS

23.      MARTA is a municipal corporation that provides public transportation for the Atlanta metropolitan area, and was formed by an act of the Georgia General Assembly in 1965.

24.      The MARTA Police Department is a department of the municipal corporation

25.      MARTA Police Department officers are employees of MARTA.

26.      Plaintiff began her employment as an officer with the MARTA Police Department on or around August 13, 2012.

27.      On October 15, 2016, Plaintiff was promoted to her current rank of Sergeant.

28.      On March 1, 2017, Plaintiff was informed by Lieutenant Binta Chapman via e-mail that she was scheduled for "Taser Certification" training.

29.      That same day, Plaintiff e-mailed Defendant Holsey, MARTA's Training Commander, and Defendant Burrows, Deputy Chief of the Department, informing them that Plaintiff was not interested in participating in Taser training, and that there was no written policy requiring Sergeants to be Taser certified.

30.     Defendant Holsey replied, stating that training was mandatory for all Field Sergeants, and that Plaintiff's promotion to Sergeant was conditioned on participation in the Taser training.

31.     Defendant Burrows admitted that Taser certification was not covered by MARTA's "General Orders", but insisted that participation in the Taser certification was "not negotiable," because Defendant Chief Dunham instituted her own training policy which required one five second exposure to the weapon.

32.     Upon information and belief, the manufacturer of the Taser weapon (TASER) recommends using simulation cartridges for training.

33.     Defendant Burrows added that Plaintiff would be demoted if she failed to attend Taser training.

34.     Plaintiff agreed that she would take the proficiency exam, attend class and perform the required drills, but requested to not be physically tasered.

35.     Defendant Burrows ended the conversation by reiterating that a single five second exposure to the weapon was mandatory, and that Plaintiff would be demoted if she failed to complete all aspects of the class.

36.     On March 3, 2017, Plaintiff reported to the MARTA Police Annex for Taser training.

37.      Plaintiff was approached by a co-worker who informed her that Defendant Holsey was agitated that Plaintiff voiced her concerns about the necessity of the Taser exposure policy.

38.      Armed with the Taser, Defendant Holsey positioned herself directly behind Plaintiff and discharged the weapon.

39.      Plaintiff experienced a 5 second electrical exposure, causing her to fall face-down on the floor.

40.      After Plaintiff fell to the floor, Defendant Holsey initiated a second exposure consisting of direct contact between the Taser and Plaintiff's left thigh.

41.      Such contact is known by the profession as a "drive stun."

42.      Upon information and belief, no other officers were exposed to a "drive stun" during certification.

43.      Holsey removed the Taser from Plaintiff's thigh and initiated a third probe based exposure.  A copy of a video documenting the exposures is attached hereto as Exhibit A.

44.      Upon information and belief, no other MARTA officers received multiple exposures to the weapon during Taser certification training.

45.      After the third exposure, Plaintiff manifested symptoms of extreme distress.

46. Plaintiff feared that Holsey would shock her again and became distraught.

47. Plaintiff vomited multiple times in a trash can at a nearby office.

48. Plaintiff drove herself to an urgent care facility for evaluation following the incident.

## FIRST CLAIM FOR RELIEF

### (14th Amendment—42 U.S.C. §1983)

### (Against Defendant MARTA Based on Act of Final Policymaker, Defendant Dunham)

49. The foregoing paragraphs are incorporated herein as if quoted verbatim.

50. On March 3, 2017, Plaintiff had a liberty interest in her bodily integrity and remaining free from unwanted Taser exposure.

51. Additionally or alternatively, forcing any officer to undergo Taser exposure in contravention of state law, state agency regulations, MARTA Police General Orders, or TASER industry recommendations is conduct that shocks the conscience.

52. Defendant Dunham was a final policymaker and acted under color of state law.

53.     The acts of Defendant Dunham deprived Plaintiff of her 14th Amendment right to liberty and bodily integrity under the United States Constitution.

54.     Additionally or alternatively, the acts of Defendant Dunham constituted conduct that shocks the conscience.

55.     Defendant Dunham had final policymaking authority from Defendant MARTA concerning these acts.

56.     When Defendant Dunham engaged in these acts, she was acting as a final policymaker of Defendant MARTA.

57.     The acts of Defendant Dunham caused the deprivation of Plaintiff's rights; that is, Defendant Dunham's acts are so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

## SECOND CLAIM FOR RELIEF

### (14th Amendment--42 U.S.C. §1983)

### (Against Defendant MARTA based on Ratification of Unlawful Policy, Custom or Practice)

58.     The foregoing paragraphs are incorporated herein as if quoted verbatim.

59.     Defendant MARTA ratified Defendant Dunham's acts, that is, Defendant MARTA, knew of and specifically made a deliberate choice to approve Defendant Burrows' act, or failure to act and the basis for it.

60.     Additionally or alternatively, Defendant Dunham ratified Defendant Holsey's acts, that is, Defendant Dunham knew of and specifically made a deliberate choice to approve Defendant Holsey's acts and the basis for them.


**THIRD CLAIM FOR RELIEF**

**(14th Amendment—42 U.S.C. §1983)**

**(Against Defendant MARTA Based on a Policy That Fails to Prevent Violations of Law or a Policy of Failure to Train or Supervise)**


61.     The foregoing paragraphs are incorporated as if quoted verbatim.

62.     The acts or failure to act by Defendants Dunham, Burrows and Holsey deprived Plaintiff of her particular liberty rights under the 14th Amendment of the United States Constitution.

63.     The following defendants acted under color of state law:

    a.  Defendant Dunham;

    b.  Defendant Burrows; and

    c.  Defendant Holsey.

64.     The training policies of Defendant MARTA were not adequate to prevent violations of Constitutional law, state law and municipal law.

65.     Defendant MARTA was deliberately indifferent to the known or obvious consequences of its failure to train its officers and employees. Additionally or alternatively, Defendant MARTA was deliberately indifferent to the substantial risk that its policies were inadequate to prevent violations of law by its officers and employees.

66.     The failure of Defendant MARTA to prevent violations of law by its employees caused the deprivation of Plaintiff's rights by Defendant Dunham, Defendant Burrows and Defendant Holsey.

67.     That is, Defendant MARTA's failure to prevent violations of law by its employees is so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused the ultimate injury.

68.     Additionally or alternatively, the failure of Defendant MARTA to train its employees caused the deprivation of Plaintiff's rights by Defendant Dunham, Defendant Burrows and Defendant Holsey.

69.     This failure to train or supervise amounted to deliberate indifference by MARTA and Defendant Dunham, MARTA's final policymaker.

## FOURTH CLAIM FOR RELIEF

### (14th Amendment—42 U.S.C. §1983)

### (Against Defendants Dunham and Burrows in their Official and Individual Capacities for Failure to Train or Supervise)

70.     The foregoing paragraphs are incorporated as if quoted verbatim.

71.     At all times relevant hereto, Defendant Dunham acted under color of state law.

72.     The act or failure to act of Defendant Dunham's subordinates, Defendant Burrows and Defendant Holsey, deprived Plaintiff of her particular rights under the United States Constitution.

73.     Upon information and belief, Defendant Dunham directed her subordinates to engage in the acts that deprived Plaintiff of her rights.

74.     Additionally or alternatively, upon information and belief, Defendant Dunham directed her subordinates to engage in acts that shock the conscience.

75.     Defendant Dunham set in motion a series of acts by her subordinates that she knew, or reasonably should have known would have caused the subordinates to deprive Plaintiff of her rights.

76.     Additionally or alternatively, Defendant Dunham knowingly refused to terminate a series of acts by her subordinates, that she knew or reasonably should have known would lead to the deprivation of Plaintiff's rights.

77.     Defendant Dunham failed to act to prevent her subordinates from engaging in such conduct.

78.     At all relevant times stated herein, there existed an obvious need to train Defendant Holsey or any other officer performing a Taser training exercise.

79.     Defendant Dunham disregarded the known or obvious consequence that a training deficiency or omission would cause her subordinates to violate plaintiff's constitutional rights.

80.     At all relevant times stated herein, Defendant Dunham knew or should have known that there was no official written policy, law, regulation, or General Order that mandated any MARTA Officer to undergo any Taser exposure.

81.     At all relevant times stated herein, Defendant Dunham knew or should have known that multiple exposures to the Taser weapon were not mandated by any official written policy, law, regulation, or General Order

82.     These deficiencies and omissions actually caused her subordinates to deprive Plaintiff of her rights.

83.     Additionally or alternatively, Defendant Dunham engaged in conduct that showed a reckless or callous indifference to the deprivation by her subordinates to the rights of Plaintiff.

84.     The act or failure to act of Defendant Burrows' subordinate, Defendant Holsey, deprived Plaintiff of her particular rights under the United States Constitution.

85.     Upon information and belief, Defendant Burrows directed his subordinate in the acts that deprived Plaintiff of her rights.

86.     Additionally or alternatively, upon information and belief, Defendant Burrows directed his subordinate to engage in acts that shock the conscience.

87.     Defendant Burrows set in motion a series of acts by his subordinate that he knew, or reasonably should have known would have caused the subordinate to deprive Plaintiff of her rights.

88.     Additionally or alternatively, the Defendant Burrows knowingly refused to terminate a series of acts by his subordinate, that he knew or reasonably should have known would lead to the deprivation of Plaintiff's rights.

89.     Defendant Burrows failed to act to prevent his subordinate from engaging in such conduct.

90.     Defendant Burrows disregarded the known or obvious consequence that a training deficiency or omission would cause his subordinate to violate plaintiff's constitutional rights.

91.     These deficiencies and omissions actually caused his subordinate to deprive Plaintiff of her rights.

92.     Additionally or alternatively, Defendant Burrows engaged in conduct that showed a reckless or callous indifference to the deprivation by his subordinate to the rights of Plaintiff.

93.     At all relevant times stated herein, Plaintiff's right to bodily integrity and to remain free from exposure by a Taser weapon was clearly established by the Constitution of the United States and the State Laws of Georgia.

94.     At all relevant times state herein, Defendant Dunham knew or should have known that her failure to supervise or train her subordinates could reasonably lead to the violation of Plaintiff's rights.

95.     Additionally or alternatively, at all relevant times stated herein, Defendant Burrows knew or should have known that his failure to train or supervise her subordinate could reasonably lead to excessive Taser exposure.

96.    On March 3, 2017, Defendant Burrows knew or should have known that such exposure were not mandated by any official written policy, law, regulation, or General Order.

97.    At all relevant times stated herein, Defendant Burrows knew or should have known that multiple exposures to the weapon was not mandated by any official written policy, law, regulation, or General Order.

98.    At all relevant times stated herein, Defendant Burrows knew or should have known that there was no official written policy, law, regulation, or General Order that mandated any MARTA Officer to undergo any Taser exposure.

99.    At all relevant times stated herein, Defendant Burrows knew or should have known that multiple exposures to the weapon were not mandated by any official written policy, law, regulation, or General Order.

## FIFTH CLAIM FOR RELIEF

### (14th Amendment—42 U.S.C. §1983)

### (Against Defendant Holsey in Her Individual Capacity for Violating Plaintiff's Liberty Interest in Bodily Integrity and Interest in Remaining Free From Taser Exposure)

100.    The foregoing paragraphs are incorporated as if quoted verbatim.

101.    At all relevant times stated herein, Defendant Holsey acted under color of state law.

102.    Defendant Holsey "shocked" Plaintiff with three Taser exposures.

103.    The act of exposing Plaintiff to two additional exposures from the Taser weapon deprived Plaintiff of her liberty interest under the 14th Amendment of the Constitution of the United States.

104.    Additionally or alternatively, the act of intentionally exposing Plaintiff to repeated electrocution from the Taser weapon constitutes an act that shocks the conscience.

105.    Defendant Holsey performed acts that she knew or should have known would result in the deprivation of Plaintiff's rights.

106.    At all relevant times stated herein, Defendant Holsey knew that the unwritten policy, practice or custom requiring Taser training did not require Plaintiff to be exposed to the effects of the weapon for more than one five second exposure.

107.    Defendant Holsey subjected other officers in the same training group to only one five second exposure.

108.    The acts of Defendant Holsey actually caused the deprivation of Plaintiff's rights.

109.     Additionally or alternatively, the acts of Defendant Holsey showed a callous or reckless indifference to the rights of Plaintiff.

## SIXTH CLAIM FOR RELIEF

### (Assault and Battery)

### (Against Defendant Holsey in her Individual Capacity)

110.     The foregoing paragraphs are incorporated as if quoted verbatim.

111.     When Defendant Holsey subjected Plaintiff to multiple Taser exposures, she acted with the intent to cause Plaintiff apprehension of a violent injury.

112.     Additionally or alternatively, Defendant Holsey intentionally engaged in and caused unwanted, harmful and offensive bodily contact to Plaintiff Tamika Chase.

113.     Plaintiff has suffered substantial physical bodily harm resulting from being shocked by excessive Taser exposures, including but not limited to lumbar spine sprain, acute lumbar strain, impingement syndrome, bursitis of the rotator cuff, and a possible rotator cuff tear.

114.     As a result of Defendant Holsey's acts, Plaintiff has also suffered severe physical or psychological abuse and has been damaged in an amount to be determined at trial.

115.    Defendant Holsey's acts were deliberate, wanton, willful, intentional, malicious and oppressive and should be punished by an award of punitive damages in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

### (Conspiracy to Commit Battery)

### (Against Defendants Dunham and Burrows in their Individual Capacities)

116.    The foregoing paragraphs are incorporated as if quoted verbatim.

117.    Upon information and belief, Defendant Burrows, Defendant Dunham and Defendant Holsey were agitated by Plaintiff's refusal to subject herself to Taser exposure.

118.    Upon information and belief, Defendant Burrows and Defendant Dunham conspired with Defendant Holsey to commit a battery against Plaintiff.

119.    Upon information and belief Defendant Burrows instructed Defendant Holsey to subject Plaintiff to multiple Taser exposures.

120.    Additionally or alternatively, upon information and belief, Defendant Dunham instructed Defendant Holsey to subject Plaintiff to multiple Taser exposure.

121.     Defendant Holsey subjected Plaintiff to more than one Taser exposure. Defendant Holsey performed the overt act to effect the object of the conspiracy.

## EIGHTH CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress)

### (Against Defendant Holsey in her Individual Capacity)

122.     The foregoing paragraphs are incorporated as if quoted verbatim.

123.     Defendant Holsey engaged in intentional or reckless conduct.

124.     That is, Defendant Holsey intentionally or recklessly exposed Plaintiff to multiple unwarranted Taser exposures.

125.     Upon information and belief, Defendant Holsey intended to retaliate against Plaintiff for objecting to the necessity of such exposure in the training class.

126.     The act of intentionally subjecting any person to multiple unwarranted Taser exposures constitutes extreme and outrageous conduct.

127.     The conduct caused the emotional distress of Plaintiff.

128.     The emotional distress was severe.  Plaintiff became distraught, began to cry, experienced physical manifestations of distress, vomited multiple times in a nearby trash can, and sought psychological counseling.

129.     Additionally or alternatively, the acts of Defendant Holsey humiliated Plaintiff.

130.     Defendant Holsey's acts were deliberate, wanton, willful, intentional, malicious and oppressive and should be punished by an award of punitive damages in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF

### (Negligence)

### (Against Defendant Holsey in her Individual Capacity)

131.     The foregoing paragraphs are incorporated as if quoted verbatim.

132.     Defendant Holsey owed a duty of care to Plaintiff.

133.     Specifically, Defendant Holsey owed a duty to refrain from exposing her officers and students to unwarranted Taser exposure.

134.     Defendant Holsey breached that duty by exposing Plaintiff to multiple taser exposures.

135.     The policy, practice or custom that called for exposures during Taser training required only one five second exposure to the weapon.

136.     Defendant Holsey's actions were the direct and proximate cause of damages to Plaintiff.

## TENTH CLAIM FOR RELIEF

### (Negligent Hiring and Supervision)

### (Against Defendants MARTA, Dunham and Burrows)

137.    The foregoing paragraphs are incorporated as if quoted verbatim.

138.    Defendants MARTA, Dunham and Burrows in the exercise of ordinary care, knew or should have known that Defendant Holsey was unsuitable for her role in directing the Taser training course.

139.    Upon information and belief, Defendants MARTA, Dunham and Burrows had:

   a.  actual knowledge of Defendant Holsey's repeated performance deficiencies;

   b.  constructive knowledge of Defendant Holsey's repeated deficiencies; or;

   c.  breached their duty to evaluate Defendant Holsey for such deficiencies.

140.    Defendants' failure to supervise was the direct and proximate cause of Plaintiff's injuries.

## DAMAGES

141.    At this time plaintiff has not completed her treatment and her medical special damages are undetermined.  However, Plaintiff will incur special damages of at least $5,000.00.

142.    Plaintiff has suffered general damages of at least $1,000,000.00.

143.    Given the willful, wanton, deliberately indifferent, or reckless nature of the conduct of all named defendants, Plaintiff is entitled to punitive damages of $3,000,000.00.

## DEMAND FOR JURY TRIAL AND PRAYER FOR RELIEF

Plaintiff hereby demands that this matter be tried by a jury of twelve (12) competent and impartial jurors.

WHEREFORE, Plaintiff respectfully requests that this Court enter an order granting the following relief:

a. The entry of judgment in favor of Plaintiff against all defendants on all counts and claims of this Complaint, including but not limited to for actual and/or compensatory damages for all past and present injury, as well as all past, present and future pain and suffering in an amount to be proven at trial;

b. an award of punitive damages against all defendants to be determined by the jury at trial;

c. entering a judgment in favor of Plaintiff against all defendants for all costs and expenses in connection with this lawsuit;

d. attorneys fees pursuant to 42 U.S.C. §1988; and

e. pre and post judgment interest at the lawful rate; and

f. awarding Plaintiff such other and further relief this Court deems just and proper.

Respectfully submitted this ___ day of October, 2017.

BURROW & ASSOCIATES, LLC.

Darrell L. Burrow
Georgia Bar No: 097495
Adam H. Long
Georgia Bar No: 141213
Attorney for Plaintiff

2280 Satellite Blvd.
Bldg A. Suite 100
Duluth, Georgia 30097
(678) 942-8640

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| TAMIKA L. CHASE, | &#124; |
| Plaintiff, | &#124;   Case No. |
| v. | &#124; |
| METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY (MARTA),  Chief of Police WANDA Y. DUNHAM, Deputy Chief MICHAEL BURROWS, and Lieutenant ALOMA HOLSEY | &#124;   **VERIFIED COMPLAINT** |
| Defendants. | &#124; |

## VERIFICATION

**PERSONALLY APPEARED** before the undersigned officer, duly appointed to administer oaths, TAMIKA L. CHASE, who, after first being duly sworn, deposes and states that the information supplied in the Complaint for Damages and Request for Jury Trial are true and correct to the best of Affiants knowledge, information and belief.  However, said information is not based solely on the knowledge of the executing party but includes, or may include, information obtained by and through Plaintiffs agents, representatives and attorneys.

The word usage and sentence structure may be that of the attorneys assisting in the preparation of the document and do not necessarily purport to be the precise language of the executing party.  Likewise, the legal objections contained in the document may be that of the attorneys assisting in the preparation of the document.

_TAMIKA L. CHASE_

TAMIKA L. CHASE

Sworn to and subscribed before me
this 22d day of October , 2016.

_Robert J. Bill_
NOTARY PUBLIC
Clayton County, Georgia
My Commission Expires 01/63/2018

**Robert L Burton
NOTARY PUBLIC
Clayton County, GEORGIA
My Comm. Expires
01/03/2018**